**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Martins GEORGE, Defendant–Appellant.**

No. 91–30001.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1992.

Decided March 10, 1993.

---

Thomas A. Campbell, Bonjorni & Campbell, Auburn, WA, for defendant-appellant.

Francis J. Diskin, Asst. U.S. Atty., Seattle, WA, for plaintiff-appellee.

Before: WALLACE, Chief Judge, SKOPIL, and LEAVY, Circuit Judges.

WALLACE, Chief Judge:

George appeals from his conviction after a jury trial for intentionally importing into the United States over 100 grams of heroin in violation of 21 U.S.C. §§ 952(a), 960(a), and 960(b)(2)(A), and possessing with intent to distribute over 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1). George contends that the district court erred in failing to suppress (1) certain statements; (2) evidence obtained in a search of his motel room; and (3) balloons filled with heroin seized in a search of his excrement while he was in the hospital. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

## I

On March 18, 1990, George, a Nigerian citizen, arrived at Seattle–Tacoma International Airport on a flight from Hong Kong with a number of heroin-filled balloons secreted in his alimentary canal. He escaped detection by Customs officials, but three days later George passed out in the back of a taxi cab. The cab driver could not revive him and called the police.

The responding police officer could not revive George and called an aid unit. The aid unit also failed to revive George and contacted the Medic Unit. The Medic Unit treated George with oxygen and an injection of Narcan, a drug designed to counter the effect of a drug overdose, and he regained consciousness. The Medic Unit then transported George to a hospital.

About three hours after he passed out, Officer Esparza, a King County Police Officer assigned to the United States Drug Enforcement Agency (DEA), contacted George in the hospital emergency room. Hospital personnel informed Esparza that George's x-rays revealed circular objects in his stomach area which they believed to be balloons and that George was suffering from a drug overdose. Officer Esparza placed George under arrest and advised him of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). George stated that he understood his rights and gave Officer Esparza the name of his motel and his room number. He also answered "yes" when asked if he would consent to a search of his motel room. The search produced evidence later introduced at trial.

Later that same night, George was transferred to a different hospital. A DEA agent accompanied George. Over the next three days, George discharged a number of balloons filled with heroin. Law enforcement personnel, who were monitoring George during this period of time, collected these balloons which either they or the nurses extracted from George's bedpans. In all, police confiscated 132.92 grams of heroin, which was between 84 and 87 percent pure. This heroin was introduced as evidence at trial.

Eleven days after George's arrest, hospital personnel advised law enforcement officers that George was healthy enough to be released. While waiting for two other officers to arrive to transport George to his arraignment before a magistrate, Officer Pierson again advised George of his *Miranda* rights. George agreed to answer some questions and made several incriminating statements regarding his involvement in the smuggling operation that were later admitted at trial.

After he was indicted, George made, and the district court denied, a pretrial motion to suppress the statements made by George in the emergency room and while leaving the hospital, evidence seized in a search of his motel room, and the heroin seized in the searches of his excrement.

## II

George first challenges the admission of certain statements made by him to law enforcement officers.

### A.

■ We review de novo a district court's conclusion that a statement was voluntary. *United States v. Lewis*, 833 F.2d 1380, 1384 (9th Cir.1987). We review for clear error the district court's findings of fact. *Id.*

The circumstances surrounding Officer Esparza's questioning of George at the hospital emergency room are critical. When first encountered, George was unconscious and suffering from an apparent drug overdose. George's condition did not stabilize until approximately four hours after Esparza first questioned him. He was a sick young man.

■ However, a defendant can voluntarily waive his *Miranda* rights even when he is in the hospital, on medication, and in pain. *See id.* at 1384–85 (holding statement voluntary despite fact that defendant had recently returned from surgery on her shoulder, was in pain, and had recently received a general anesthetic); *United States v. Martin*, 781 F.2d 671, 673–74 (9th

Cir.1985) (*Martin* ) (holding statements voluntary even though defendant under the influence of Demerol, a pain killer, and still in pain).

Here, the record suggests that at the time of the interrogation, George spoke voluntarily. Esparza told George that he was under arrest and asked if he understood. George answered "yes." Esparza advised George of his *Miranda* rights and asked if he understood. George answered "yes." George then agreed to answer some questions. In response to Esparza's questioning, George identified the name of the motel where he was staying and the room number. George also answered "yes" when Esparza asked him for consent to search his motel room and any belongings in it. George was coherent, gave responsive answers to Esparza's questions, and was able to remember accurately his motel and room number. Although George was undoubtedly in critical condition at the time, his injuries "did not render him unconscious or comatose." *Martin*, 781 F.2d at 674. Finally, nothing in the record suggests that Esparza sought to take advantage of George's weakened condition: he asked simple questions, kept the interview short, and did not receive any indication from George that he wanted a lawyer before he answered any more questions.

*Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), on which George relies, does not mandate a different result. In *Mincey*, the police interrogated the defendant while he was in the intensive care unit of a hospital. Quite unlike this case, Mincey was unable to speak because of a tube in his mouth and had to communicate by writing on pieces of paper. *Id.* at 396, 98 S.Ct. at 2415. He repeatedly asked that the interrogation be stopped until he could get a lawyer, but the police refused and continued their questioning. Finally, some of Mincey's answers were incoherent, and he lost consciousness several times during the interrogation. *Id.* at 396–401, 98 S.Ct. at 2415–2418. Thus, the factors that led the Supreme Court to conclude that Mincey's "will was simply overborne," *id.* at 401–02, 98 S.Ct. at 2418, are not present here.

**B.**

■ George also challenges the admission of certain statements made by him shortly before his release from the hospital. George contends that the 11–day delay between his arrest and arraignment before a magistrate violated his rights under Federal Rule of Criminal Procedure 5(a) and that these statements should have been suppressed. We review the district court's denial of a motion to suppress de novo. *United States v. Homick*, 964 F.2d 899, 903 (9th Cir.1992).

A delay caused by medical necessity does not violate Rule 5(a). *United States v. Aman*, 624 F.2d 911, 913 (9th Cir.1980). As soon as George was healthy enough, the police arranged for him to appear before a magistrate. There is no evidence that the police purposely delayed to obtain George's confession. *Cf. United States v. Wilson*, 838 F.2d 1081, 1086–87 (9th Cir. 1988) (reversing denial of suppression motion where police delayed arraignment for no purpose other than to allow further interrogation of defendant). Therefore, the district court did not err in refusing to suppress these statements.

**III**

■ George next contends that the district court erred in finding that he voluntarily consented to a search of his motel room. We review for clear error the voluntariness of a consent to search. *United States v. Koshnevis*, 979 F.2d 691, 694 (9th Cir.1992).

For the reasons discussed in part IA., the record suggests that George had the capacity to consent while he was in the hospital emergency room, and that his consent was not the product of any undue police coercion. The district court therefore did not clearly err in concluding that George voluntarily consented to the search of his motel room.

**IV**

■ Finally, George contends that the district court erred in denying his motion to

suppress drugs seized by the police in a search of his excrement. We review de novo the district court's decision to admit evidence obtained during a warrantless search. *United States v. Wryn*, 952 F.2d 1122, 1123 (9th Cir.1991).

A search or seizure only violates the Fourth Amendment where the defendant has an actual (subjective) expectation of privacy in the premises searched or the item seized and that expectation is one that society is prepared to recognize as reasonable. *See Minnesota v. Olson*, 495 U.S. 91, 95–96, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990); *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). George concedes that the Fourth Amendment would not have barred hospital personnel from entering his room, extracting the drugs from his bedpan, and turning them over to police. *See United States v. Chukwubike*, 956 F.2d 209, 212–13 (9th Cir.) (*Chukwubike*), cert. denied, — U.S. —, 112 S.Ct. 2288, 119 L.Ed.2d 212 (1992). He argues instead that he had a reasonable expectation of privacy in his hospital room and that the police violated his rights by entering his hospital room and going through his bedpans themselves.

Even if we assume that George had a subjective expectation of privacy in his hospital room, that expectation was not objectively reasonable. The state law cases cited by George all involved circumstances in which the police seized evidence before the defendant was placed under arrest. *See, e.g., People v. Jordan*, 187 Mich.App. 582, 468 N.W.2d 294, 297 (1991); *People v. Brown*, 88 Cal.App.3d 283, 151 Cal.Rptr. 749, 752 (1979). George, however, did not voluntarily admit himself into the hospital; he was admitted under police supervision following his arrest. Based on the x-rays and George's condition, the police had probable cause to believe that George had the balloons in his stomach and that the balloons contained illegal narcotics. The police thus were justified in arresting George. Under these circumstances, it would be wholly unrealistic not to expect the police to place George under surveillance. In ad-

dition, "[t]he balloons certainly, or at least probably, contained contraband. They were subject to immediate confiscation." *Chukwubike*, 956 F.2d at 212. Any invasion of George's privacy was necessitated entirely by the unsavory method by which he chose to smuggle the drugs into this country and the time it took for him to expel the balloons. We therefore conclude that the district court did not err in refusing to suppress the heroin seized by the police.

AFFIRMED.