

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2002

# USA v. Hernandez-Mota

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3433

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Hernandez-Mota" (2002). *2002 Decisions.* Paper 287.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/287

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-3433

_____

UNITED STATES OF AMERICA

v.

ROBERTO HERNANDEZ-MOTA,

Appellant

_____

On Appeal from the District Court
of the Virgin Islands, Division of St. Croix
(D.V.I. Crim. No. 01-cr-00012)
District Judge: Chief Judge Honorable Raymond L. Finch

_____

Submitted under Third Circuit LAR 34.1(a)
Tuesday, May 14, 2002

_____

Before: AMBRO, FUENTES and GARTH, Circuit Judges

(Filed May 21, 2002)

_____

OPINION OF THE COURT
_____

GARTH, Circuit Judge:

Defendant/Appellant Roberto Hernandez-Mota ("Mota") appeals from the District Court's denial on March 5, 2001 of his motion to suppress evidence in connection with a charge of illegal drug trafficking under 21 U.S.C. 841(a)(1). Mota pled guilty to the charge on March 6, 2001, but reserved the suppression issue for appeal. He was sentenced on July 26, 2001 to sixty months imprisonment and three years of supervised release. This Court has jurisdiction over his timely appeal under 28 U.S.C. 1291. We affirm.

I.

Because the facts of this case are well known to the parties and were recited in full in the District Court's opinion, we merely summarize them here.

On December 5, 2000, Mota arrived by airplane in St. Croix at approximately 2 p.m. St. Croix was his final destination on a one-way ticket, purchased with cash, originating in Puerto Rico and continuing through St. Maarten.

Upon arriving in St. Croix, Mota was stopped by U.S. Customs Officials for routine questioning. Mota's answers to the Custom Officials' questions, however, were

illogical and confusing, and he appeared to be in ill health.  Mota refused to consent to either  medical attention or an x-ray.

Approximately four hours after arriving in St. Croix, Mota became so ill that it became clear that he needed professional medical attention.  He was taken to a local hospital where an emergency room doctor, Dr. Lyn Campbell, diagnosed Mota as having foreign objects in his stomach and ordered an x-ray and, subsequently, surgery.

The ensuing operation revealed approximately twenty-five containers of material that had been hidden in Mota's alimentary canal.  Customs Inspectors seized the containers without a warrant and found at least some of them to contain heroin.

## II.

Mota contends that the warrantless seizure of physical evidence as a result of his operation should have been suppressed as unreasonable under the Fourth Amendment.  His contention is without merit.

"Routine" searches of entrants to the United States at an international border "are not subject to any requirement of reasonable suspicion, probable cause, or warrant." United States v. Montoya De Hernandez, 473 U.S. 531, 538 (1985).  The detention of a traveler beyond the scope of a routine search, however, is justified if customs agents "reasonably suspect that the traveler is smuggling contraband in her alimentary canal." Id. at 541.  This standard requires that border officials have a "particularized and objective basis for suspecting the particular person of alimentary canal smuggling."  Id. at 541-42 (citing United States v. Cortez, 449 U.S. 411, 417 (1981)).  A detention for a period of time "necessary to either verify or dispel the suspicion" is not unreasonable.  Id. at 544.

The Supreme Court has also held that warrantless border searches based on reasonable suspicion may take place at an "extension" of the border.  An extended border search occurs "after the first point in time when the person or package might practicably have been stopped and searched."  United States v. Caminos, 770 F.2d 361, 364 (3d Cir. 1985); see also United States v. Hyde, 37 F.3d 116, 120 n.2 (3d Cir. 1994).  In addition to reasonable suspicion, extended border searches require that "the searched person or item is shown to have crossed the border, [that] there has been no opportunity for the object or person to have materially changed since the crossing, and [that] the search is conducted at the earliest practicable time and place."  Caminos, 770 F.2d at 364.

In his briefs before this Court, Mota does not contest the District Court's finding that Customs Officials were reasonable in their suspicion that he was smuggling drugs in his alimentary canal.  Instead, he ignores the existence of the extended search doctrine altogether, citing consent as the only relevant exception to the Fourth Amendment's warrant requirement.  He then asserts that, due to his refusal to consent to an x-ray before the operation and his anesthetized state after the operation, he did not consent to the seizure of the containers removed during surgery.

The District Court, however, denied Mota's motion to suppress based on the extended border search doctrine.  The court found that the Customs Officials were reasonable in their suspicion that Mota was smuggling drugs, that he was only detained for as long as was necessary to verify that suspicion, that he crossed the border, and that the seized materials had not changed since his crossing.  We review the District Court's factual findings for clear error, and its application of law to those facts de novo.

The District Court was correct.  Customs Officials had a reasonable suspicion that Mota was smuggling drugs in his alimentary canal.  He traveled from a known source location for drug trafficking on a one-way ticket purchased with cash.  He provided confused and illogical answers to the inspectors' initial questions, and expressed numerous physical signs of drug overdose and smuggling.  These signs ranged from a hardened abdomen and shaking legs to his eyes rolling back in his head and his becoming comatose with liquid running from his nose and mouth.  He also failed to provide a consistent explanation for his illness, claiming first to have fluid on his knees, and then an ulcer.  All of these facts are more than sufficient to constitute a particularized and objective basis for suspecting Mota of alimentary canal smuggling.

Mota's detention was also not for a period of time longer than that needed to either verify or dispel the suspicion that he was smuggling drugs.  He was detained for about ten hours from the time he landed in St. Croix until he underwent the emergency operation.  Because he would not consent to an x-ray, this time period was absolutely

necessary to resolve the Custom Officials' reasonable suspicion that he was smuggling drugs in his alimentary canal. Had surgery not become necessary, his detention would have been justified for much longer, i.e., until the containers were expelled naturally. Other courts applying this standard have found much longer detention periods reasonable. See, e.g., Montoya De Hernandez, 473 U.S. at 544 (4 days); United States v. Esieke, 940 F.2d 29, 35 (2d Cir. 1991) (3 days); United States v. Yakubu, 936 F.2d 936, 939 (7th Cir. 1991) (20 hours); United States v. Odofin, 929 F.2d 56, 61 (2d Cir. 1991) (24 days).

Furthermore, the circumstances surrounding this case satisfy the remaining criteria for an extended border search. Mota had clearly crossed the border when he was first detained by Customs Officials. There was no chance that either he or the contraband had materially changed since his crossing, as he was under surveillance from his arrival in St. Croix until the containers were retrieved. Finally, the search occurred as soon as practicable in light of Mota's lack of cooperation with the authorities.

### III.

The Customs Inspectors were justified under the Fourth Amendment's extended border search doctrine in their warrantless detention of Mota and in the resultant search and seizure of the containers that were surgically removed from him.

For the foregoing reasons, we will affirm the District Court's denial of Mota's motion to suppress.


 TO THE CLERK:

Please file the foregoing opinion.

By the Court,

/s/ Leonard I. Garth
Circuit Judg