**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>       v.<br><br>HAILU DANIEL MANDEFERO,†<br><br>               Appellant. | No. 80072-8-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

MANN, C.J. — Trial courts do not have the discretion to impose an exceptional sentence downward for firearm enhancements when the offender is not a juvenile at the time they commit the crime. Hailu Mandefero appeals his sentence for assault in the first degree, assault in the second degree, and unlawful possession of a firearm in the second degree, with mandatory firearm weapons enhancements on the assault offenses. In a previous appeal, we affirmed Mandefero's convictions but remanded for resentencing. Mandefero asserts that the sentencing court erred by (1) determining that it could not consider his youth with regard to the firearm enhancements, (2) refusing to meaningfully consider his youth with regard to the sentences imposed for assault in the second degree and unlawful possession of a firearm, and (3) demonstrating a lack of impartiality that deprived him of due process. We affirm.

---

† Mandefero's middle name also appears as "Dagnew" in the record.

I.

On May 1, 2012, Mandefero shot Jaebrione Gary multiple times as Gary sat in his car outside Ezell's Chicken in Skyway. Shots fired by Mandefero and his accomplice went through the windows of the Ezell's Chicken building where employees were working, including Sandra Torres, who felt bullets pass near her head. Gary identified Mandefero as the shooter. Gary believed Mandefero shot him because two weeks prior he had ripped a gold chain off Mandefero's neck in front of a group of people and bragged about it to his friends.

A jury found Mandefero guilty of assault in the first degree of Gary with a firearm enhancement, assault in the second degree of Torres with a firearm enhancement, and unlawful possession of a firearm in the first degree. The trial court imposed a low end standard range sentence of 120 months on the assault in the first degree count, 17 months on the assault in the second degree count, and 12 months on the unlawful possession of a firearm count, plus 2 mandatory firearm weapons enhancements for 60 and 36 months. The sentences on the 3 counts ran concurrently, and the firearms enhancements ran consecutive to the other sentences and to each other. Although Mandefero was 18 years old when he committed the crimes, the trial court did not consider Mandefero's youth as a mitigating factor for an exceptional sentence downward because it believed it lacked the discretion to do so.

After his convictions were affirmed on direct appeal, Mandefero filed a personal restraint petition asserting, among other claims, that the trial court erred in failing to consider his request for an exceptional sentence downward because of his youth. The

State conceded that resentencing was appropriate. Accordingly, this court remanded for resentencing and dismissed Mandefero's remaining claims.

A resentencing hearing took place on May 24, 2019. Mandefero requested an exceptional downward sentence of 96 months based on his youth and the traumatic impact of his involvement with gang violence. Two community members spoke in support of Mandefero's request. The State requested that the court reimpose the original sentence, noting that the crime was premeditated and not the result of youthful impulsiveness. The State also argued that a psychological evaluation obtained by Mandefero prior to the resentencing hearing showed that he was still a danger to the community.

The court reviewed the factors it considered regarding Mandefero's youth as a potential mitigating factor. The court noted that Mandefero, who was almost 19 at the time of the offense, was not "markedly immature." The court further noted that the shooting was calculated and premeditated, that there was no evidence Mandefero was pressured into it, and that Mandefero had not shown genuine remorse. The court did, however, see a connection between Mandefero's youth and the recklessness of his behavior. The court concluded that this factor was mostly connected to the first degree assault, somewhat connected to the second degree assault, and not at all connected to the firearm possession charge. The court also noted that the second degree assault offense involved multiple victims and constituted "egregious behavior." Accordingly, the court imposed an exceptional downward sentence for the first degree assault charge but not the other two charges. The court stated that the firearm enhancements on both

assault convictions are mandatory and run consecutive to each other.  It entered findings of fact and conclusions of law supporting the sentence.

Mandefero now appeals the resentencing court's decision.

II.

Mandefero argues that the trial court erred in concluding that it lacked discretion to consider his youth with regard to the mandatory firearms weapon enhancements.  We disagree.

RCW 9.94A.535 permits a court to impose an exceptional sentence below the standard range if "substantial and compelling reasons [justify] an exceptional sentence" and "mitigating circumstances are established by a preponderance of the evidence."  However, RCW 9.94A.533(3)(e) provides that "[n]otwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements."  In State v. Brown, our Supreme Court held that this "absolute language" deprives a sentencing court of discretion to impose an exceptional sentence regarding deadly weapon enhancements.  139 Wn.2d 20, 29, 983 P.2d 608 (1999) overruled on other grounds by Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017).

In the 21 years since Brown was decided, the legislature has chosen not to amend this statutory language with respect to adult offenders.  It did recently amend RCW 9.94A.533 to allow courts "full discretion to depart from mandatory sentencing enhancements and to take the particular circumstances surrounding the defendant's youth into account"—but only for juveniles.  Laws of 2020, ch. 141, § 1.  "This court

presumes that the legislature is aware of judicial interpretations of its enactments and takes its failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision." State v. Otton, 185 Wn.2d 673, 685-86, 374 P.3d 1108 (2016) (quoting City of Federal Way v. Koenig, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009)).

Relying primarily on Houston-Sconiers, State v. O'Dell, 183 Wn.2d 680, 358 P.3d 359 (2015), and State v. McFarland, 189 Wn.2d 47, 399 P.3d 1106 (2017), Mandefero asserts that the sentencing court had discretion to consider his youth in deciding whether to impose consecutive firearm enhancement sentences despite the fact that he was not a juvenile when he committed the crimes. Mandefero is incorrect.

In Houston-Sconiers, the Washington Supreme Court held that the Eighth Amendment requires courts to have "complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant." 188 Wn.2d at 21 (emphasis added). Thus, Houston-Sconiers overrules Brown only as it applies to juveniles. 188 Wn.2d at 21. Because Mandefero was almost 19 years old at the time of his offenses, Houston-Sconiers does not apply to him, and Brown controls.

Mandefero nevertheless contends that this court should disregard Brown and follow Justice Madsen's concurring opinion in Houston-Sconiers and hold that the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, "includes the discretion to depart from the otherwise mandatory sentencing enhancements when the court is imposing an exceptional sentence" on any offender. 188 Wn.2d at 34. But because "a decision by the Washington Supreme Court is binding on all lower courts of the state . . . [t]his court does not have the authority to overrule Brown." State v. Brown, 13 Wn.

App. 2d 288, 291, 466 P.3d 244 (2020) (citing State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984)).

Mandefero's reliance on O'Dell and McFarland is also unavailing. In O'Dell, the Washington Supreme Court recognized that "age may well mitigate a defendant's culpability, even if that defendant is over the age of 18." 183 Wn.2d at 695. The court therefore remanded for a new sentencing hearing to consider whether O'Dell's youth mitigated his culpability and justified an exceptional downward sentence. 183 Wn.2d at 683. But O'Dell did not address a downward departure from mandatory sentencing enhancements for adult offenders. And in McFarland, the Washington Supreme Court held that RCW 9.94A.535 and .589(1)(c) permit the court to impose exceptional concurrent sentences for firearms related convictions. 189 Wn.2d at 54-55. But the McFarland court expressly distinguished firearm enhancements from firearms convictions and noted that RCW 9.94A.533 requires that enhancements be served consecutively. 189 Wn.2d at 55. Neither case provides a basis for departing from the Washington Supreme Court's ruling in Brown.

III.

Mandefero next asserts that the trial court erred in failing to meaningfully consider his youth with regard to resentencing him to standard range sentences on the offenses of assault in the second degree and unlawful possession of a firearm. The record does not support this claim.

The SRA provides that a standard range sentence "shall not be appealed." RCW 9.94A.585(1). "However, this prohibition does not bar a party's right to challenge the

underlying legal conclusions and determinations by which a court comes to apply a particular sentencing provision." State v. Williams, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003). "A discretionary sentence within the standard range is reviewable in 'circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range.'" McFarland, 189 Wn.2d at 56 (quoting State v. McGill, 112 Wn. App. 95, 100, 47 P.3d 173 (2002)).

> It is the refusal to exercise discretion or the impermissible basis for the refusal that is reviewable, not the substance of the decision about the length of the sentence. Conversely, a trial court that has considered the facts and has concluded that there is no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling.

State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

Here, the record establishes that the trial court understood its legal authority, took Mandefero's youth into consideration for all three offenses, and found it justified an exceptional downward sentence for the first degree assault offense but not for the second degree assault and the unlawful possession of a firearm. After considering various factors that could mitigate Mandefero's culpability, the court stated:

> I think the recklessness of Mr. Mandefero's behavior is the thing that jumps out to me as most connected to youth. And so I see that connection in the assault on Mr. Gary and to a lesser degree I see it in the Assault in the Second Degree offense. I really don't see it for the—final offense of possession of his weapon because I think there's really sort of no excuse for that and there's nothing about any of the qualities of being youthful that contribute to that.
>
> I'm not going down, however, on the standard range for the Assault in the Second Degree because there were so many victims and this was egregious behavior.

7

> Where I am inclined to reduce the standard range is with regard to Mr. Gary. But not very far, frankly, because I think recklessness only takes me so far on this range.

The court properly exercised its discretion in making these determinations. Its decision regarding the second degree assault and unlawful possession of a firearm offenses is not appealable.

## IV.

Mandefero next contends that the cumulative effect of the trial court's interjections and questions at the resentencing hearing demonstrated a lack of impartiality, thereby constituting a manifest constitutional error that denied his due process right to a fair trial.[2] He contends that resentencing before a different judge is necessary. We disagree.

Mandefero did not object at the sentencing hearing to the comments he now challenges on appeal. A claim of error may be raised for the first time on appeal only if it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). "The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review." State v. McFarland, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995).

"At a minimum, due process requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular

---

[2] In his reply brief, Mandefero argues that the trial court's comments also violated the appearance of fairness doctrine. But a challenge based on the appearance of fairness doctrine does not implicate constitutional rights and is deemed waived when not raised in the trial court. State v. Tolias, 135 Wn.2d 133, 140, 954 P.2d 907 (1998).

case." In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). "A judicial proceeding is valid only if it has an appearance of impartiality, such that a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing." State v. Ra, 144 Wn. App. 688, 705, 175 P.3d 609 (2008). A defendant's due process right to a fair trial is implicated where the trial court's activities "turn a neutral judge into the state's advocate." State v. Moreno, 147 Wn.2d 500, 512, 58 P.3d 265 (2002). There is a presumption that the trial court properly acted without bias or prejudice, and the party seeking to overcome that presumption must provide specific evidence establishing actual or potential bias. Davis, 152 Wn.2d at 692; State v. Carter, 77 Wn. App. 8, 11-12, 888 P.2d 1230 (1995).

Mandefero first challenges an exchange between the trial court and the prosecutor at the beginning of the resentencing hearing in which the court asked the State to confirm whether the court's recollection of a particular fact was accurate. He asserts that the trial court demonstrated a lack of impartiality and assumed the role of counsel by "answer[ing] her own 'questions' for the State, affirm[ing] the State's responses, and referr[ing] to the State and the Court in terms of 'we' and 'our.'" The record does not support this interpretation. Rather, it is apparent that the court was referring to the shared experience of observing the facts as presented at the trial and original sentencing hearing. Defense counsel at resentencing was not present at the trial and therefore could not participate in this shared recollection.

Mandefero next asserts that the judge demonstrated bias following the State's observation that the victim of the first degree assault charge was subsequently killed in a separate incident and could not speak for himself. The judge stated, "No. But he

certainly impressed me at trial. I will never forget him." The judge later explained that she remembered Gary because he was "frightened enough and unwilling enough to participate in this process that he came into court and took Mr. Mandefero right off the hook." "It is not evidence of actual or potential bias for a judge to point out to a defendant the harm caused to a victim by his or her criminal conduct." State v. Worl, 91 Wn. App. 88, 97, 955 P.2d 814 (1998).

Lastly, Mandefero asserts that the trial court did not ask questions of defense counsel, but rather took on an argumentative manner that assumed the role of the State. Defense counsel stated that she could not imagine a situation where her own son would get into the same problems as Mandefero because she lives in North Seattle whereas Mandefero lived in Rainier Beach. The court stated that it did not find this argument persuasive, noting that "there are so many law-abiding, achieving people who live in Rainier Beach" and that gang activity "exists in a lot of nice neighborhoods." Mandefero has not shown that these comments were improper or showed that the court was biased towards him. Moreover, following defense counsel's presentation, the court allowed two community members to speak on Mandefero's behalf without interruption. Mandefero also spoke without interruption in favor of an exceptional sentence. Mandefero has not demonstrated bias or prejudice. He has therefore not established manifest constitutional error.

V.

In a statement of additional grounds, Mandefero asserts that mandatory firearm enhancements under RCW 9.94A.533 are no longer constitutional following Houston-Sconiers. He contends that RCW 9.94A.533 cannot be interpreted to exclude juveniles

from its mandatory provisions because the SRA clearly demonstrates the legislature's intent that the act's provisions apply to all offenders, including juveniles. On this basis, he contends that the statutory scheme as a whole is now unconstitutional and must be stricken. But RCW 9.94A.533 is not facially unconstitutional because it can be constitutionally applied to adults. See City of Redmond v. Moore, 151 Wn.2d 664, 669, 91 P.3d 875 (2004) (a statute is unconstitutional on its face if "no set of circumstances exists in which the statute, as currently written, can be constitutionally applied.").

In the alternative, Mandefero argues that RCW 9.94A.533 is unconstitutional as applied to his case and that he is entitled to the same relief as the juveniles in Houston-Sconiers. This is so, he contends, because "the very reasons juveniles in adult court are looked at with less culpability is [due] in large part to their underdeveloped brain" and recent research shows that "this period of adolescent brain development continues well into the mid-twenties." Mandefero appears to challenge the Washington Supreme Court's holding in Houston-Sconiers that the Eighth Amendment requires the court to consider the mitigating circumstances associated with the youth of juveniles, not adults. 188 Wn.2d at 21. However, as discussed above, the Washington Supreme Court's decision to limit Houston-Sconiers to juveniles is binding on all lower courts of this state. Gore, 101 Wn.2d at 487.

Affirmed.

_____  Mann, C.J.

WE CONCUR:

_____  _____
Chun, J.                 Dwyer, J.

11