# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56370-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ARMANDO ARCIGA-GOMEZ, | |
| Appellant. | |

CHE, J. — In 2016, Armando Arciga-Gomez was charged with one count of attempted second degree murder, including a firearm enhancement, and one count of second degree unlawful possession of a firearm. Arciga-Gomez was 16 years old at the time of the offense. As part of a plea agreement, Arciga-Gomez pleaded guilty to a lesser charge of first degree assault with a deadly weapon enhancement. The plea agreement provided, in part, that Arciga-Gomez may recommend any sentence within the standard sentencing range. Although Arciga-Gomez recommended a sentence at the low end of the standard range, the trial court imposed a midpoint sentence of 132 months of confinement. Arciga-Gomez appeals his standard range sentence.

We hold that (1) Arciga-Gomez may appeal his standard range sentence and (2) Arciga-Gomez does not establish a *Houston-Sconiers* error, which would entitle him to a resentencing hearing. Consequently, we affirm.

FACTS

In March 2016, Armando Arciga-Gomez, age 16, was part of a large group at a park observing a "brawl between two women," one of whom became the victim in Arciga-Gomez's case. Rep. of Proc. (RP) at 10. At some point, Arciga-Gomez "came forward . . . pointed [a firearm] at [the victim], and pulled the trigger." RP at 10. When the firearm failed to discharge, Arciga-Gomez pulled the trigger multiple times in an attempt to shoot the victim. Despite Arciga-Gomez's repeated attempts to pull the trigger, the firearm failed to discharge. The victim "charged" Arciga-Gomez, who fled into a vehicle. A struggle ensued and Arciga-Gomez again attempted to pull the trigger multiple times but the gun, again, failed to discharge.

The State originally charged Arciga-Gomez with one count of attempted second degree murder, including a firearm sentence enhancement, and one count of second degree unlawful possession of a firearm. Pursuant to a plea agreement, Arciga-Gomez entered a plea of guilty to a reduced charge of one count of first degree assault with a deadly weapon enhancement.

In September 2016, the trial court held a sentencing hearing. Consistent with the plea agreement, the State recommended a midpoint, standard range sentence plus the deadly weapon enhancement totaling 132 months of confinement.[1] The State explained that the recommendation accounted for Arciga-Gomez's youth, gang involvement, repeated attempts to fire his weapon at the victim, the victim's lack of injuries as a result of Arciga-Gomez's actions, and the victim's wishes.

---

[1] The standard range for Arciga-Gomez with zero points was 93-123 months plus a deadly weapon, other than a firearm, sentence enhancement of 24 months.

Under the conditions of his plea agreement, Arciga-Gomez could argue any sentence within the standard range. Accordingly, Arciga-Gomez requested a low-end sentence of 117 total months of confinement. Arciga-Gomez proceeded with his sentencing despite his family not being able to attend. In support of a low-end sentence, defense counsel explained that Arciga-Gomez was young, immature, and impressionable. Defense counsel stated, "[A]s the court may or may not know, I had a couple of psychologists involved in looking at his situation . . . and what I'm characterizing [Arciga-Gomez] as is bright and somewhat immature, impressionable, [Arciga-Gomez] was certainly viewed that way by Dr. Goldman." RP at 14-15. Defense counsel detailed the offense and investigation and noted when it disagreed with the State's assertions at sentencing. Defense counsel emphasized that Arciga-Gomez struggled with substance abuse, was intoxicated at the time of the offense, was not the only one pointing a gun, and likely "got caught up in the excitement." RP at 17. Defense counsel recounted that Arciga-Gomez experienced "dysfunction in [his] family" and sought a sense of belonging through his gang affiliation. RP at 17.

Defense counsel further highlighted Arciga-Gomez's lack of violent criminal history, lack of prior crimes that qualify as points toward his offender score, and success while in juvenile detention. Specifically, defense counsel emphasized Arciga-Gomez's engagement in programming, receipt of certificates, and progress towards receiving his high school diploma.

In its oral ruling, the trial court stated, "I have to sentence you to the midpoint of the range . . . I'm not giving you the maximum sentence available under this standard sentencing range nor am I going to give you the lowest. I'm going to give you the midpoint." RP at 20. The trial court further explained that it would "waive some costs, fees, and fines because [the

3

trial court was] sure [Arciga-Gomez was] indigent," noting that Arciga-Gomez was 17 years old. RP at 20.  The trial court sentenced Arciga-Gomez to a standard range sentence of 108 months plus 24 months on the deadly weapon enhancement for a total of 132 months of confinement. Arciga-Gomez's Statement of Defendant on Plea of Guilty explicitly provided that "[i]f the court imposes a standard range sentence, then no one may appeal the sentence."  Clerk's Papers (CP) at 6.

Arciga-Gomez appealed.[2]  Following oral argument, we ordered Arciga-Gomez to clarify his position on appeal.  Specifically, this court asked whether Arciga-Gomez was requesting to be allowed to present and have the trial court consider evidence of the mitigating factors of his youth to support a request for (1) a sentence at the low end of the standard range or (2) an exceptional sentence below the standard range.  Arciga-Gomez submitted additional briefing clarifying that he preferred option 2 but that he did not reject option 1.

ANALYSIS

I. APPEALABILITY

As an initial matter, the State argues that Arciga-Gomez may not appeal his standard range sentence.  The State contends that we should not consider Arciga-Gomez's arguments

---

[2] Arciga-Gomez filed his notice of appeal in August 2021, more than 30 days after entry of his judgment and sentence in September 2016.  Arciga-Gomez argued that when he pleaded guilty he "was given inaccurate advice," specifically, that "he waived his right to appeal a determination of guilt" and "that he did not have the right to appeal a sentence within the standard range."  Mot. to Extend Time to File at 1-2.  The State conceded that it could "not establish that [Arciga-Gomez] waived his right to appeal" but argued "that does not mean he has the right to directly appeal his standard range sentence."  Resp. to Mot. to File Late Appeal at 1. Subsequently, this court ruled that "[b]ased on the State's concession, this court accepts [Arciga-Gomez's] late-filed notice of appeal."  Comm'r's Ruling (Mar. 8, 2022).

because he "negotiated a favorable plea, [and] received a mid-point standard range sentence from a judge who understood his discretion in sentencing." Br. of Resp't at 6. The State relies on *State v. Moten*, 95 Wn. App. 927, 976 P.2d 1286 (1999) to support its argument. We disagree.

Generally, a sentence that is within the standard range for an offense is not appealable. RCW 9.94A.585(1); *State v. Osman*, 157 Wn.2d 474, 481, 139 P.3d 334 (2006). However, such a prohibition does not bar a defendant's "right to challenge the underlying legal conclusions and determinations by which a court comes to apply a particular sentencing provision." *State v. Mandefero*, 14 Wn. App. 2d 825, 833, 473 P.3d 1239 (2020) (quotation marks omitted) (quoting *State v. Williams*, 149 Wn.2d 143, 147, 65 P.3d 1214 (2003)). Moreover, a defendant is permitted to appeal a standard range sentence on the basis of the sentencing court's failure to conform to the procedural requirements of the Sentencing Reform Act of 1981 (SRA) or constitutional requirements. *Osman*, 157 Wn.2d at 481-82.

Our Supreme Court mandates that "[b]ecause 'children are different' under the Eighth Amendment and hence 'criminal procedure laws' must take the defendants' youthfulness into account, sentencing courts must have absolute discretion to depart as far as they want below otherwise applicable SRA ranges and/or sentencing enhancements when sentencing juveniles in adult court." *State v. Houston-Sconiers*, 188 Wn.2d 1, 9, 391 P.3d 409 (2017). Accordingly, "[t]rial courts must consider mitigating qualities of youth at sentencing." *Id.* at 21. *Houston-Sconiers* clarified that "[t]o the extent our state statutes have been interpreted to bar [a trial court's] discretion with regard to juveniles, they are overruled." *Id.* Thus, the SRA's mandatory sentencing scheme does not apply to juveniles, such as Arciga-Gomez. *Id.* at 34.

Nevertheless, where a defendant "specifically negotiated [their] standard range sentence as part of a plea agreement," they cannot then "choose to argue that the sentence is unconstitutional as applied to [them]." *Moten*, 95 Wn. App. at 934. In *Moten*, the defendant entered an *Alford*[3] plea "'in order to take advantage of the prosecutor's recommendation.'" *Id.* at 930. As part of the plea agreement, the defendant waived the right to appeal his sentence if it was within the standard range. *Id.* The trial court imposed a standard range sentence and the defendant appealed, arguing that his sentence "constitutes cruel and unusual punishment and violates his equal protection rights." *Id.* at 929.

On appeal, Division One of this court declined to reach the merits of the defendant's arguments, explaining that "by the terms of [the defendant's] plea agreement, [he] waived his right to raise these nonjurisdictional challenges to his sentence." *Id.*

Although the State relies on *Moten* to argue that Arciga-Gomez's plea precludes his constitutional challenge, *Moten* is distinguishable. First, *Moten* does not appear to involve a youthful offender. Second, *Moten* was decided before *Houston-Sconiers*, a material change in the law, and thus its reasoning could not have contemplated that decision. Third, the court in *Moten* emphasized that the defendant pleaded guilty using an *Alford* plea to receive "the benefit of his bargain" and that in negotiating his standard range sentence, he had expressly waived his right to appeal that sentence. *Id.* at 933. Unlike in *Moten*, Arciga-Gomez did not make similar use of an *Alford* plea and waiver of his right to appeal. Arciga-Gomez's plea agreement did contain form language stating "[i]f the court imposes a standard range sentence, then no one may

---

[3] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

appeal the sentence." CP at 6. However, Arciga-Gomez is not precluded from challenging the underlying legal conclusions and determinations of the sentencing court. *See Mandefero*, 14 Wn. App. 2d at 833.

Here, Arciga-Gomez challenges the underlying legal conclusions and determinations by which the trial court imposed its standard range sentence. Specifically, Arciga-Gomez argues the sentencing court did not comply with the broadened constitutional protections decided in *Houston-Sconiers* when it failed to consider the mitigating factors of his youth.

Accordingly, in light of our Supreme Court's holding in *Houston-Sconiers*, Arciga-Gomez may appeal his standard range sentence.

## II. MITIGATING QUALITIES OF YOUTH

Arciga-Gomez argues that the trial court failed to consider the mitigating qualities of his youth, which requires reversal. Arciga-Gomez contends that "[a]lthough the parties mentioned Arciga-Gomez's age and involvement with gangs, very little was said about the mitigating qualities of his youth—nothing drawing a nexus between those factors and the crime." Br. of Appellant at 2-3. We disagree that Arciga-Gomez has shown that he is entitled to a resentencing.

*Houston-Sconiers* established both a substantive rule and two procedural rules. *In re Pers. Restraint of Forcha-Williams*, 200 Wn.2d 581, 594, 520 P.3d 939, 947 (2022). Under *Houston-Sconiers'*s substantive rule, "the Eighth Amendment prohibits imposing adult standard SRA ranges and enhancements that would be disproportionate punishment for juveniles who possess diminished culpability." *Id.* (footnote omitted) (citing *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 237, 474 P.3d 507 (2020)).

*Houston-Sconiers'*s substantive rule is effectuated by two procedural rules characterized as the "dual mandates" of *Houston-Sconiers*, which require sentencing courts to meaningfully consider the mitigating qualities of youth and recognize their discretion to depart from standard SRA sentencing ranges. *In re Pers. Restraint of Domingo-Cornelio*, 196 Wn.2d 255, 269, 474 P.3d 524 (2020). Mitigating qualities of youth include "'age and its hallmark features, such as the juvenile's immaturity, impetuosity, and failure to appreciate risks and consequences.'" *Ali,* 196 Wn.2d at 243 (internal quotation marks omitted) (quoting *Houston-Sconiers*, 188 Wn.2d at 23). Courts must also consider circumstances like "the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and 'the way familial and peer pressures may have affected [them],' . . . how youth impacted any legal defense, along with any factors suggesting that the [juvenile] might be successfully rehabilitated." *Id.*

On direct appeal, the defendant only needs to show that a *Houston-Sconiers* error exists in order to obtain a new sentencing hearing. *In re Pers. Restraint of Carrasco*, 1 Wn.3d 224, 230, 525 P.3d 196 (2023).

Here, Arciga-Gomez is on direct appeal and argues that a *procedural Houston-Sconiers* error exists, namely that the sentencing court failed to consider his mitigating qualities of youth. However, "[a] violation of that procedural right does not [necessarily] lead to the conclusion that [a defendant] is serving an unconstitutional sentence under the Eighth Amendment." *Id.* at 237. Arciga-Gomez does not appear to argue a substantive *Houston-Sconiers* error; therefore, we consider only whether he is entitled to a resentencing based on the alleged existence of a

procedural *Houston-Sconiers* error.  On this ground, we hold Arciga-Gomez is not entitled to relief.

First, the record establishes that the sentencing court did in fact consider the mitigating qualities of Arciga-Gomez's youth.  In arguing for their respective sentence recommendations, counsel addressed Arciga-Gomez's age, early gang participation due to family dysfunction, out of state nonviolent juvenile convictions and continued juvenile probation via an interstate compact, susceptibility to interrogation tactics during a five-hour interrogation without counsel, Arciga-Gomez's family's move to Washington to place Arciga-Gomez in a better environment, bad choices made by Arciga-Gomez, Arciga-Gomez's social media post with self-incriminating statements about the incident, and his views of himself as an alcoholic with some history of drug abuse.

The trial court heard that Arciga-Gomez was not the only individual pointing guns during the incident and that Arciga-Gomez likely got caught up in the excitement of his gang allegiance, of belonging.  Arciga-Gomez noted attempts to interview the victim to determine whether the allegations were accurate.  Arciga-Gomez indicated he earned certificates while in juvenile programming, was three credits shy of obtaining his high school diploma, and would avail himself of services during his sentence.  Lastly, Arciga-Gomez presented that Dr. Goldman, a psychologist, characterized Arciga-Gomez as "bright and somewhat immature, impressionable." RP at 15.  The record shows the trial court acknowledged the "interesting . . . arguments that [we]re made" and explained that "[its] job is to try and balance the hope, if you will, for everybody, including the community.  Hope for you, hope for the community, hope for safety, hope for everybody being able to get on with their life without the risk of being shot if they get

9

into a fist fight." RP at 19. Thus, Arciga-Gomez does not show that the sentencing court failed to meaningfully consider his mitigating qualities of youth.

Furthermore, to the extent Arciga-Gomez argues that the sentencing court did not recognize it could depart from the standard sentencing range, we disagree. Arciga-Gomez's guilty plea reads, "The judge may impose an exceptional sentence below the standard range if the judge finds mitigating circumstances supporting an exceptional sentence." CP at 6. The trial court rejected Arciga-Gomez's low-end recommendation and said, "I'm not giving you the maximum sentence . . . nor am I going to give you the lowest. I'm going to give you the midpoint." RP at 20.

The trial court generally acknowledged its sentencing discretion, and nothing in the record suggests the trial court would have exercised its discretion to depart below 117 months in light of information already presented about Arciga-Gomez's mitigating qualities of youth. Thus, the trial court acknowledged Arciga-Gomez's age, family situation, gang environment, and options for Arciga-Gomez in juvenile rehabilitation, among other things, before rejecting Arciga-Gomez's recommendation of 117 months. In doing so, the trial court effectively declined to sentence Arciga-Gomez to anything less than 117 months.

Thus, Arciga-Gomez does not show that his sentencing violates *Houston-Sconiers'*s procedural rules. Because Arciga-Gomez does not show that the trial court erred, he is not entitled to relief.

CONCLUSION

Accordingly, we hold that (1) Arciga-Gomez may appeal his standard range sentence and (2) Arciga-Gomez does not establish a *Houston-Sconiers* error, which would entitle him to a resentencing hearing. Consequently, we affirm his standard range sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, J.

Glasgow, C.J.