# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58191-4-II |
| Respondent, | |
| v. | |
| BOB NOEL LEE ROTH, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Bob Noel Lee Roth appeals his standard range sentence, arguing the trial court erred by failing to properly consider his request for an exceptional downward sentence. Roth also challenges the imposition of the crime victim penalty assessment (CVPA) and DNA collection fee on his judgment and sentence. The State does not object to striking the CVPA and DNA collection fee.

Because the trial court meaningfully considered Roth's request for an exceptional downward sentence but reasonably concluded such a departure was not justified by the evidence presented at sentencing, the trial court did not abuse its discretion. Therefore, we hold that Roth cannot appeal the length of his standard range sentence, and we affirm Roth's sentence. However, we remand to the trial court with instructions to strike the CVPA and DNA collection fee from Roth's judgment and sentence.

FACTS

A. BACKGROUND FACTS

On March 16, 2022, Roth and Brent Rogers had an altercation in Puyallup. Rogers was parked outside a restaurant when Roth parked in front of him. Rogers exited his vehicle and entered the restaurant. After Rogers exited the restaurant, he observed Roth sitting in Roth's vehicle; Roth asked Rogers whether a nearby vehicle was Rogers', and Rogers responded affirmatively. Roth responded, "Nice car. That's why I put my steel-toed boot in the headlight," and then drove away. 2 Verbatim Rep. of Proc. (VRP) (Mar. 21, 2023) at 157.

Rogers pursued Roth, calling 911 as he did. Eventually, Roth and Rogers stopped outside Roth's home. Rogers saw Roth "making erratic movements" and told the 911 operator he though Roth had a gun. 2 VRP (Mar. 21, 2023) at 158. When police arrived, they found no evidence of a gun, and based on their subsequent investigation, concluded that Rogers' allegation that Roth kicked his car was "unfounded." 3 VRP (Mar. 22, 2023) at 266.

However, one of the responding officers—Sergeant David Obermiller—spoke with Roth and later testified that Roth smelled of alcohol and had bloodshot, glassy eyes, drooping eyelids, and slurred speech. Sergeant Obermiller then performed some field sobriety tests. Based on Roth's performance on the field sobriety tests and Roth's general state, Sergeant Obermiller concluded that "Roth was impaired and should not have been driving." 3 VRP (Mar. 22, 2023) at 281.

Sergeant Obermiller subsequently took Roth into custody for driving under the influence (DUI). After doing a driver's check, Sergeant Obermiller learned that Roth was driving on a suspended license and was required to have an interlock ignition device on his vehicle. Sergeant

2

Obermiller confirmed that the vehicle Roth had been driving did not have the required interlock ignition device. After being arrested, Roth's blood alcohol content (BAC) was measured at .159 and .168.

The State charged Roth with one count of felony DUI (count 1) and two gross misdemeanors: driving with a suspended or revoked license in the first degree (count 2) and failure to have a required ignition interlock device (count 3). After a jury trial, Roth was found guilty as charged.

B.     SENTENCING

Both parties filed a sentencing memorandum with the trial court. The parties agreed that Roth should be sentenced to 364 days of confinement for the convictions on counts 2 and 3 and that the sentence for those convictions should run concurrently to the conviction on count 1. The parties disagreed on the appropriate sentence for the conviction on count 1: the State recommended a standard range sentence of 57 months (the high end of the standard sentencing range) while Roth sought an exceptional downward sentence of 30 months of confinement.

At sentencing, Roth amended his request and sought an exceptional downward sentence of 25 months of confinement for the conviction on count 1. Roth argued that this exceptional sentence was justified because he did not injure anyone and none of the witnesses at trial testified to seeing Roth drive erratically. Roth argued this lack of harm was indicative of his entire record of DUIs: "This isn't a person who has ever been charged or convicted of any kind of vehicular assault," he "is not a person who gets in impacts and rolls his car or anything like that." 4 VRP (May 5, 2023) at 344. Roth also argued that he was amenable to treatment, had been sober for over a year, and was "obviously capable of following the Court's orders." 4 VRP (May 5, 2023)

3

at 346. Finally, Roth argued that State resources would be better utilized treating him than imprisoning him.

The State argued that in light of Roth's extensive history of DUIs, Roth should be sentenced to the high end of the standard sentencing range for the conviction on count 1. The State noted that Roth was being sentenced for his eighth DUI conviction, and that Roth's BAC was almost twice the legal limit when he was arrested. Thus, the State argued, the danger Roth posed to the community and his history of treatment without improvement justified a 57 month sentence.

The trial court denied Roth's request for an exceptional downward sentence, explaining:

> I have reviewed both the memorandums prepared by counsel. I have sat through the trial. I have reviewed Mr. Roth's history, and it's true. It's significantly limited to driving and the DUI offenses and the offspring of all those DUIs.
> In good conscience, I cannot go below the standard range. In good conscience, I can't do anything except impose the high end of the standard range. It appears to me as though the public has been fortunate eight times in that nobody has been hurt or injured otherwise by Mr. Roth and his driving.
> I understand the claim that he can follow court orders. At the time of his arrest, he was breaking at least two court orders. Not just the law, but two court orders in addition to the law in terms of driving without the ignition interlock and while his license was suspended.

4 VRP (May 5, 2023) 347.

The trial court sentenced Roth to 57 months of confinement for the conviction on count 1 and 364 days for the convictions on counts 2 and 3, to run concurrently with the sentence for the conviction on count 1. The trial court also ordered that Roth undergo alcohol or chemical dependency treatment services while incarcerated.

The trial court found Roth indigent because he "was indigent at the time he received his attorney" and "[h]is finances presumably have not improved and won't improve over the next three

years." 4 VRP (May 5, 2023) at 348. The trial court imposed the $500 CVPA and $100 DNA collection fee.

Roth appeals.

## ANALYSIS

A.    SENTENCING

Roth argues that the trial court erred by not properly considering his request for an exceptional downward sentence. The State responds that the record shows the trial court considered Roth's request and appropriately exercised its discretion in imposing a standard range sentence, and therefore, Roth is precluded from appealing his standard range sentence. We agree with the State.

1.    Legal Principles

A standard range sentence is not appealable. RCW 9.94A.585(1); *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). However, "this rule does not preclude a defendant from challenging on appeal the underlying legal determinations by which the sentencing court reaches its decision." *McFarland*, 189 Wn.2d at 56; *see also State v. Mandefero*, 14 Wn. App. 2d 825, 833, 473 P.3d 1239 (2020). In other words, a defendant cannot challenge the length of their standard range sentence, but can seek review where the trial court (1) refuses to exercise its discretion at all or (2) refuses to impose an exceptional sentence for impermissible reasons. *McFarland*, 189 Wn.2d at 56.

We review the trial court's denial of a request for an exceptional sentence for an abuse of discretion. *See id.* A trial court abuses its sentencing discretion when "'it refuses categorically to impose an exceptional sentence below the standard range under any circumstances'" or refuses to

exercise its discretion due to a "'mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which [a defendant] may have been eligible.'" *Id.* (alteration in original) (first quoting *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997), *review denied*, 136 Wn.2d 1002 (1998); then quoting *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 333, 166 P.3d 677 (2007)).

Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the trial court may impose an exceptional sentence if it finds "that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. The SRA provides a nonexclusive list of mitigating factors the trial court may consider. RCW 9.94A.535(1). The mitigating factors must be established by a preponderance of the evidence, and the trial court may rely on "only such information as is admitted to or acknowledged at the time of sentencing." RCW 9.94A.535(1); *State v. Nelson*, 108 Wn.2d 491, 497, 740 P.2d 835 (1987). So long as the trial court "'has considered the facts and has concluded that there is no basis for an exceptional sentence,'" it has appropriately exercised its discretion, and the defendant cannot appeal the resulting standard range sentence. *Mandefero*, 14 Wn. App. 2d at 833 (quoting *Garcia-Martinez*, 88 Wn. App. at 330).

2. Roth Cannot Appeal His Standard Range Sentence

The record shows that the trial court understood its discretion to depart from the standard sentencing range, considered Roth's mitigation arguments, and concluded that Roth's mitigating evidence was not sufficiently substantial and compelling to justify the exceptional downward sentence that Roth requested.

Roth requested an exceptional downward sentence of 25 months. Roth argued that the downward sentencing departure was justified because his intoxicated driving did not cause actual

6

harm, he was amenable to treatment for his substance use, he was capable of following the trial court's orders, and State resources would be better utilized treating Roth than imprisoning him. The record shows that the trial court considered Roth's arguments but concluded an exceptional sentence was not justified in the face of Roth's extensive criminal history of intoxicated driving, the danger Roth's behavior posed to the community at large, and Roth's demonstrated inability to follow two of the court's orders at the time of his arrest. Thus, the trial court did not categorically refuse Roth's request, nor did the court refuse Roth's request due to a mistaken belief that it lacked the discretion to depart from the standard range.

Rather, the trial court explicitly considered Roth's extensive criminal history of driving while intoxicated and acknowledged that Roth's intoxicated driving did not result in actual harm to the community, but the court reasonably concluded that it was luck rather than any action on Roth's part that had protected the community. The trial court also considered Roth's amenability to treatment and his ability to follow court orders, reasonably concluding those were not substantial and compelling reasons to depart from the standard range in the face of Roth's disregard for his suspended license status and ignition interlock device requirement. Also, the uncontroverted facts presented at sentencing showed that Roth has an extensive criminal history of DUI and other driving-related crimes despite previous attempts at treatment.

The trial court meaningfully considered Roth's mitigating evidence and reasonably concluded that neither luck nor Roth's purported ability to follow court orders were substantial and compelling enough reasons to depart from the standard sentencing range. Thus, Roth cannot appeal the length of his standard range sentence.

B.     LFOs

Roth argues that the CVPA and DNA collection fee should be stricken from his judgment and sentence. The State does not object to striking the CVPA or DNA collection fee.

Pursuant to RCW 7.68.035(4), the CVPA is no longer authorized for indigent defendants. And the State does not object to striking the CVPA from Roth's judgment and sentence. Also, effective July 1, 2023, the DNA collection fee is no longer statutorily authorized. RCW 43.43.7541; LAWS OF 2023, ch. 449, § 4. Because Roth's case is on appeal, the amendments to RCW 7.68.035(4) and RCW 43.43.7541 apply. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 17, 530 P.3d 1048, *pet. for rev. filed*, No. 102378-2 (Sep. 14, 2023). Therefore, imposition of the CVPA and DNA collection fee are no longer authorized and should be stricken from Roth's judgment and sentence.

CONCLUSION

Because the trial court meaningfully considered Roth's arguments in support of an exceptional downward sentence and there is no indication in the record that the trial court thought it had no ability to depart from the standard sentencing range, Roth cannot appeal the length of his standard range sentence. Thus, we affirm Roth's sentence. However, we remand to the trial court with instructions to strike the CVPA and DNA collection fee from Roth's judgment and sentence.

No. 58191-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, C.J.

Veljacic, J.