# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59392-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| PHYLECE M. WOODDELL, | |
| Appellant. | |

CHE, J. — Phylece May Wooddell appeals her standard range sentence for vehicular homicide.

Wooddell, at 22 years old and with a blood alcohol concentration (BAC) of 0.19, crashed her vehicle into D. Saylor's oncoming vehicle at a high rate of speed. Saylor died at the scene due to the injuries he sustained. Wooddell pleaded guilty to vehicular homicide. She requested a mitigated sentence based on her youth, developmental and emotional immaturity, and inability to conform her conduct with the requirements of the law due to untreated mental health conditions. The trial court imposed a standard range sentence.

Wooddell argues that the trial court abused its discretion in denying her request for a mitigated sentence because adultification bias[1] impacted its sentencing decision.

We hold that the trial court did not abuse its discretion because it properly considered her request for a mitigated sentence and adultification bias did not impact the trial court's standard range sentencing decision.

Accordingly, we affirm.

## FACTS

### BACKGROUND

In 2023, 22-year-old Wooddell crashed her car into an oncoming truck while traveling at a high rate of speed. Police pronounced the driver of the truck, D. Saylor, deceased at the scene. Wooddell's BAC measured 0.19.

### PROCEDURAL FACTS

The State charged Wooddell with vehicular homicide. Wooddell pleaded guilty by admitting to operating a motor vehicle "while under the influence of intoxicating liquor (my driving was affected to an appreciable degree due to my intoxication) and as a proximate cause of my conduct, I did cause injuries to Mr. Saylor, who died . . . as a proximate result of the injuries he received in the motor vehicle collision." Clerk's Papers (CP) at 253. The trial court accepted her guilty plea after finding that it was knowingly, intelligently, and voluntarily given.

---

[1] Adultification is "the tendency of society to view Black children as older than similarly aged youths" and the assertion that this tendency "may detrimentally affect children of color at criminal sentencings." *In re Pers. Restraint of Miller*, 21 Wn. App. 2d 257, 265, 266, 505 P.3d 585 (2022). Indeed, this court "recognize[s] that adultification is real and can lead to harsher sentences for children of color if care is not taken to consciously avoid biased outcomes." *Id.* at 267.

The parties did not agree on a joint sentencing recommendation. Wooddell had a standard sentencing range of 78-102 months, followed by 18 months of community custody. The State indicated it would seek 88 months and Wooddell indicated she would seek an exceptional downward sentence of 33 months.

*Sentencing Materials*

The State's sentencing memorandum recommended that the court should impose 88 months because Wooddell caused Saylor's death by driving impaired and by driving in a reckless manner at an extremely high rate of speed. The State acknowledged Wooddell's age but argued "that a mid-point sentence is appropriate given the egregiousness of her choices . . . and the risk to community safety she poses." CP at 8.

Wooddell's sentencing memorandum requested an exceptional downward sentence of 33 months. Wooddell relied on (1) *State v. O'Dell*—that her "youth, and developmental and emotional immaturity at the time of the incident" made her less culpable than an average adult, and (2) RCW 9.94A.535(1)—that, as a mitigating factor, her capacity to conform her conduct to the requirements of the law were significantly impaired, but excluding voluntary use of alcohol or drugs. 183 Wn.2d 680, 695, 358 P.3d 359 (2015), CP at 18. In the over 200-page memorandum, Wooddell included a forensic psychological report, proof of participation in mental health treatment, numerous letters of support from community members, a mitigation report, school records, and Child Protective Services records, among other materials.

In her materials, Wooddell described her youth, developmental and emotional immaturity, and "her inability to conform her conduct with the requirements of the law due to untreated mental health conditions." CP at 10. Specifically, Wooddell detailed her traumatic childhood,

her mental health diagnoses of major depressive disorder and anxiety disorder, substance abuse and post-traumatic stress disorder, becoming a mother at a young age, and domestic violence she experienced. Wooddell also described her progress since the incident, including treatment to process her trauma and to address her mental health conditions, her weekly attendance at treatment sessions with her therapist, regular participation in visitations with her children, and positive reports from her case workers and social worker.

*Sentencing Hearing*

At sentencing, Jamie Saylor, the daughter of Saylor, spoke on behalf of her family. Jamie[2] described Saylor's truck as "unrecognizable. . . . [it was] bent up like an accordion," and that he "died immediately on impact due to blunt force trauma to the head." Rep. of Proc. (RP) at 15-16. She called Wooddell's decision to get behind the wheel while intoxicated "irresponsible and selfish." RP at 16. She continued, "[t]his is just a careless act, in a race to get weed before the store closed, that resulted in taking the life of a man who people called their dad, grandpa, great-grandpa, brother, uncle, and friend." RP at 17. And "[Wooddell] had no business being on the road in the first place, with a suspended license, let alone after alcohol consumption and substance in her body." RP at 17. She also said that her father's death impacted her life and her health "in a major way." RP at 18.

But Jamie also recognized that her life and Wooddell's life "ha[d] quite a few similarities, including both having our first child at 17." RP at 19. She acknowledged that "while out on bail" Wooddell had "her ducks in a row" and had not missed any visits with her children. RP at 19.

_____

[2] For clarity, this opinion uses Jamie Saylor's first name, no disrespect is intended.

She also said that Wooddell "taking accountability for her actions and pleading guilty . . . needs to count for something" before stating: "I don't think giving her the maximum sentence will do anything to benefit her or her kids, and it won't bring my dad back . . . I leave the sentencing up to the judge." RP at 20-21.

The State recommended 88 months, which recognized Wooddell's decision to plead guilty, forego trial, and any pain a trial would cause Saylor's family. The State argued that age should not play a factor in sentencing because Wooddell's age was "already accounted for in the 88 months recommendation." RP at 24. The State went on to say that the [driving under the influence (DUI)] prong of vehicular homicide is a strict liability crime and "everyone understands that the inherent danger to driving DUI. . . . You don't have to be told, 'Don't drive impaired. That's dangerous.' We all know that. . . . [H]er age matters very little here." RP at 24-25.

Wooddell requested an exceptional downward sentence of 33 months based on *O'Dell* and RCW 9.94A.535. 183 Wn.2d 680. Wooddell highlighted the legal bases for her sentencing request, the psychologist's report, her rehabilitation efforts, and her sincere apology.

The trial court had reviewed Wooddell's dependency files "because I really wanted to get an understanding . . . where your client's been and what she's been doing." RP at 37. The trial court recognized that Wooddell did not initially engage in services and "she was making no progress and there was no compliance." RP at 37. Then, after the car accident, Wooddell had a mental health evaluation, received a diagnosis and an aftercare plan, and started engaging in that plan. From that point, Wooddell completed 30 days of [urinalysis tests], remained clean, and had positive interactions with her children.

5

The trial court stated that, to depart from the standard range, it must apply a two-part test to determine whether the asserted factor—in this case youthfulness—can be used. First, the factor, youthfulness, cannot support the imposition of an exceptional sentence if the legislature "necessarily considered" it when it established the standard sentence range. RP at 49. However, the trial court said, "that's not the case here" "because age has nothing to do with the crime of vehicular homicide or the range itself." RP at 50. Second, "the factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category." RP at 50.

The trial court then discussed three relevant U.S. Supreme Court cases, *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), and *Graham v. Florida,* 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), recognizing that there are neurological differences in young offenders and generally, they are less culpable for their crimes. Thereafter, the court distinguished *O'Dell*,

> [he] was 18 at the time of his crime, there was quite a bit of factual testimony and evidence in his sentencing hearing that he acted as a juvenile. . . . He did things juveniles would do, and one of the things . . . is he had a Lego collection. He had a poster of Daffy Duck on his [motorcycle] in his room. He played video games. His maturity was called into question by, you know, every adult there. They just essentially referred to him as a kid, you know, a young kid. He's a boy. . . .
>
> I don't have that type of evidence. What I have is an expert psychologist who says, yes, Ms. Wooddell's executive function has been interfered with as a result of the trauma that she suffered throughout her life, from the time she was growing up into as a young woman.
>
> The Court is not required to take that into account and it's—because it only provides the Court with authority to depart on that basis, depart meaning sentence her under the standard range. And the Court is not persuaded that's a substantial and compelling reason to do so in this case.

RP at 51-52.  In discussing *O'Dell*, the court also said, "I'm not disputing your client has had a very tough go of it, a lot of trauma in her life.  You know, she's a mother.  She was raising three children . . . but [she] doesn't seem to have those youthful characteristics at this point as opposed to O'Dell."  RP at 34.  It went on to say:

> Wooddell is surrounded by people that have her interests at heart and want her to succeed and they mentor her and they partner with her, she does well . . . [but] prior to that . . . she was not doing well and that's really evidenced by the fact that she was so intoxicated on the night that this happened. . . .
>
> But here's the gist of it.  Ms. Wooddell was being offered these services prior to the accident. . . .
>
> [D]id this accident turn on the light for her and say, you know, I really need to straighten my life out?  It may well be.  I mean, one could look at it and surmise that's the case.  That's probably what happened.  But if that were the case, the Court does not find that there are substantial and compelling reasons based on a mental health, mental disease, or defect that went significantly untreated for the majority of Ms. Wooddell's life.
>
> The Court's going to decline to depart from the standard range.

RP at 53-54.

The trial court sentenced Wooddell to 78 months of confinement—the low end of the standard range and less than the State's request of 88 months.  It explained that it sentenced Wooddell to the low end of the standard sentence range because of her zero offender score and because she demonstrated that she could conform to the court's requirements for counseling and mental health treatment.

Wooddell appeals her judgment and sentence.

ANALYSIS

I. REQUEST FOR AN EXCEPTIONAL SENTENCE

Wooddell argues the trial court abused its discretion by failing to consider her request for an exceptional downward sentence. Specifically, Wooddell argues that the sentencing court's disregard of evidence establishing her developmental immaturity and mitigating youthfulness demonstrates adultification bias and gender bias by the court and that these biases impacted the trial court's sentencing decision. We disagree.

A.    *Legal Principles*

Standard range sentences "shall not be appealed." RCW 9.94A.585(1). But this prohibition does not prohibit a party's right to challenge the underlying legal conclusions and determinations by which a trial court comes to apply a particular sentencing provision. *State v. Mandefero*, 14 Wn. App. 2d 825, 833, 473 P.3d 1239 (2020).

We review a trial court's decision to deny an exceptional sentence for an abuse of discretion. *State v. Delbosque*, 195 Wn.2d 106, 116, 456 P.3d 806, 812 (2020). "A trial court errs when 'it refuses categorically to impose an exceptional sentence below the standard range under any circumstances' or when it operates under the 'mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which [a defendant] may have been eligible.'" *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1006 (2017) (alteration in original) (quoting *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

When a party requests the trial court to make a discretionary sentencing decision, the court "must meaningfully consider the request in accordance with the applicable law." *Id.* (citing *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005)). A trial court may depart from the

8

sentencing guidelines and impose a sentence outside the standard sentence range if it finds that there are substantial and compelling reasons to justify an exceptional sentence. RCW 9.94A.535. Before a court may impose an exceptional downward sentence, it must find that the mitigating circumstance is established by a preponderance of the evidence. RCW 9.94A.535(1). RCW 9.94A.535(1) provides a non-exclusive list of mitigating circumstances.

In determining "whether a factor legally supports departure from the standard sentence range," courts apply a two-part test:

> First, a factor cannot support the imposition of an exceptional sentence if the legislature *necessarily* considered that factor when it established the standard sentence range. Second, in order to justify an exceptional sentence, a factor must be "sufficiently substantial and compelling to distinguish the crime in question from others in the same category."

*O'Dell*, 183 Wn.2d at 690 (internal citations omitted) (citing *State v. Ha'mim,* 132 Wn.2d 834, 840, 940 P.2d 633 (1997)).

A sentencing court may consider youth as a mitigating factor when determining whether to impose an exceptional sentence below the standard range. *Id.* at 695-96. Age may mitigate a defendant's culpability, even if the defendant is over 18 years old. *Id.* The court may consider whether youth diminished the defendant's capacity to "appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law." RCW 9.94A.535(1)(e); *O'Dell*, 183 Wn.2d at 689.

When a trial court "has considered the facts and has concluded that there is no basis for an exceptional sentence [it] has exercised its discretion, and the defendant may not appeal that ruling." *Mandefero*, 14 Wn. App. 2d at 833 (quoting *Garcia-Martinez*, 88 Wn. App. at 330).

B.      *The Trial Court Exercised Its Sentencing Discretion*

Here, the trial court acknowledged Wooddell's request for a mitigated sentence, and applied the correct two-part test to determine whether Wooddell's youthfulness provided a "sufficiently substantial and compelling" reason to depart from the standard range. *O'Dell*, 183 Wn.2d at 690. The trial court determined Wooddell's youthfulness and circumstances did not provide a basis for a mitigated sentence, in part by contrasting the behaviors of the defendant in *O'Dell* with Wooddell's own behavior.

To be sure, age may mitigate a defendant's culpability, and failure to "meaningfully consider youth as a possible mitigating circumstance" is an abuse of discretion subject to reversal. *O'Dell*, 183 Wn.2d at 697 (citing *Grayson,* 154 Wn.2d at 342  (the trial court's failure to consider an exceptional sentence authorized by statute is reversible error)). But "age is not a per se mitigating factor automatically entitling every youthful defendant to an exceptional sentence." *Id.* at 695.

The record demonstrates that the trial court understood its ability to consider Wooddell's youth, brain development, and personal circumstances. The trial court thoroughly engaged with the information provided and determined that Wooddell's youthfulness was not sufficiently "substantial and compelling" to distinguish her crime from others in the same category. RP at 52. In addition, the trial court expressly acknowledged case law in which "the Court recognizes that there are neurological differences between young offenders . . . and that they are less culpable for their crimes." RP at 50. *See Miller*, 567 U.S. at 479 (holding "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders"), *Graham*, 560 U.S. at 72 (holding "[t]he Constitution prohibits the imposition of a life

10

without parole sentence on a juvenile offender who did not commit homicide . . . if [a State] imposes a sentence of life it must provide . . . some realistic opportunity to obtain release"), and *Roper*, 543 U.S. at 578 (holding "The Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed.").

Despite that, Wooddell contends that the "judge's failure to recognize Wooddell's youthful qualities suggests his evaluation of the evidence was impacted by bias," because the court focused on "kid-like behaviors [in distinguishing *O'Dell*]. . . . It's hard to believe Wooddell's race and gender did not impact the court's distinction." Br. of Appellant at 23. Wooddell acknowledges, "There is no indication the judge knowingly or intentionally discriminated against Wooddell on the basis of race or gender. . . . But implicit racial bias is so common and pervasive that it inevitably exists 'at the unconscious level, where it can influence our decisions without our awareness.'" Br. of Appellant at 23 (quoting *State v. Berhe*, 193 Wn.2d 647, 657, 444 P.3d 1172 (2019)). Wooddell further argues "Courts must conscientiously consider whether adultification bias has affected the outcome of a sentencing decision. In this case it has. The court's decision, impacted by such bias, constitutes an abuse of discretion." Br. of Appellant at 24.

Wooddell essentially asks this court to rely solely on an assumption that because implicit bias exists it must have occurred here, without providing any basis or evidence of any bias. Although this court recognizes that "implicit racial bias can be particularly difficult to identify and address," and that all courts must be vigilant against it, this court declines to adopt the standard Wooddell suggests and we will not presume bias where the trial court reviewed all of

11

Wooddell's tendered evidence, acknowledged her difficult circumstances, addressed and distinguished the relevant caselaw regarding sentencing youthful offenders, and sentenced Wooddell to the low end of the standard range. *Berhe*, 193 Wn.2d at 663. Furthermore, Wooddell presents no authority where prior courts have assumed implicit bias in similar circumstances. *Gosney v. Fireman's Fund Ins. Co.*, 3 Wn. App. 2d 828, 872-73, 419 P.3d 447 (2018) (quoting *State v. Logan*, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000)) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

The trial court neither categorically refused to impose an exceptional sentence below the standard range under any circumstances nor operated under a mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which Wooddell may have been eligible. *See McFarland*, 189 Wn.2d at 56. Instead, the trial court considered the law and facts presented and concluded that Wooddell's circumstances did not provide a substantial and compelling basis for an exceptional sentence below the standard range. Moreover, Wooddell fails to show that any adultification bias impacted the trial court's decision where it considered thoroughly the sentencing materials and the relevant case law, and then imposed a low end standard range sentence. Thus, we hold that the trial court did not abuse its discretion when it declined to depart from the sentencing guidelines and imposed a standard range sentence. *Mandefero*, 14 Wn. App. 2d at 833.

CONCLUSION

We hold that the trial court did not abuse its discretion because it properly considered Wooddell's request for a mitigated sentence. Additionally, we hold that adultification bias did not impact the trial court's low end standard range sentencing decision. Accordingly, we affirm Wooddell's sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Cruser, C.J.

Veljacic, J.